AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED BY _____ D.C.

AUG 2 5 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| ALEXANDER JOLLY | ) | |
| KENOLD MILLION | ) | 20-MJ-6381-Strauss |
| AND | ) | |
| PIETRO SINCLAIR | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **August 10, 2020 to August 24, 2020** in the county of **Broward** in the **Southern** District of **Florida**, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 670(a)(1) and (b)(1) | Theft of Medical Products |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

John Walenda, Postal Inspector
*Printed name and title*

Sworn in my presence by Telephone and FaceTime

Date: August 25, 2020

_____
*Judge's signature*

City and state: Fort Lauderdale, Florida

Jared M. Strauss, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your Affiant, John Walenda, being duly sworn, deposes and states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am employed by the United States Postal Inspection Service ("USPIS") as a Postal Inspector and have been employed in that capacity since May 1996. I am currently assigned to the Homeland Security Team with the responsibility of investigating violations of federal laws where the United States Mail is being used to transport prohibited items, including controlled substances and the proceeds from the sale of controlled substances, which have been sent from locations within and from outside the United States. During my employment, I have participated in investigations involving the transmission of controlled substances or the proceeds from the sale of controlled substances via the United States Postal Service and other couriers. I have participated in hundreds of theft and fraud investigations, including cargo theft during my career. I have received training from the USPIS and other law enforcement agencies in profiling and investigating parcels containing narcotics and narcotics proceeds, as well as internal and external theft.

2. As a USPIS Postal Inspector, I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code U.S.C., Section § 2510(7). That is, I am an officer of the United States who is empowered by law to conduct investigations and to make arrests for crimes furthered through the use of the U.S. Mail or in connection to the U.S. Postal Service ("USPS"), property of the USPS, other postal offenses, as set forth in 18 U.S.C. § 3061, as well as violations of the Controlled Substances Act, Title 21, and other violations involving interstate commerce.

3. Based on my training and experience, and the information contained in this Affidavit, I respectfully submit that probable cause exists to charge Alexander Jolly ("JOLLY"), Kenold

Million ("MILLION"), and Pietro Sinclair ("SINCLAIR") with using a means or facility of interstate or foreign commerce to steal pre-retail medical products, in violation of Title 18, United States Code, Section 670(a)(1), while being employed by, or as an agent of, an organization in the supply chain for the pre-retail medical product, in violation of Title 18, United States Code, Section 670(b)(1).

4. The statements contained in this Affidavit are based on my personal knowledge, as well as information relayed to me by other law enforcement officials and witnesses involved in this investigation. I have not included in this Affidavit each and every fact and circumstance known to me, but only the facts and circumstances that are sufficient to establish probable cause. As such, it does not include everything I know about this investigation.

## Federal Regulations for Medical Devices

5. A "device" under the Federal Food, Drug, and Cosmetic Act ("FDCA") is "an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is . . . intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or . . . intended to affect the structure or any function of the body of man or other animals, and which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of its primary intended purposes." 21 U.S.C. § 321(h).

6. Respirators, medical masks, and gloves are "devices" that are subject to FDA regulation when they are intended for a medical purpose. All of the devices, including the medical masks, gloves, and medical equipment referenced in this affidavit are manufactured outside of the State

2

of Florida and received in the Southern District of Florida after being transported in interstate commerce.

7. Based on my review of the definition of device found in 21 U.S.C. § 321(h) and the intended uses of the respirators, medical masks, and gloves at issue, these medical products are devices and, accordingly, medical products as defined in 18 U.S.C. § 670.

## PROBABLE CAUSE

8. Owens & Minor is a private healthcare logistics and medical supply business which sells medical products to healthcare providers. Owens & Minor products include personal protective equipment currently utilized by healthcare practitioners in responding to the current Covid-19 pandemic. Owens & Minor operates a warehouse located at 14599 Northwest 8th Street, Sunrise, Florida (hereinafter referred to as the "Sunrise warehouse").

9. Owens & Minor has a contract with Penske Corporation (hereinafter referred to as "Penske") to distribute products to customers. Per this agreement, a Penske employee obtains products from the Sunrise warehouse in a Penske truck and delivers the products to customers throughout the south Florida area.

10. On or before August 3, 2020, Owens & Minor discovered significant quantities of products were being removed, without authorization, from the Sunrise warehouse on a recurring basis. Owens & Minor contacted Integritet Global, a private investigations firm, to investigate the matter. Penske was aware of the investigation and assisted.

11. MILLION and JOLLY are employed by Owens & Minor at the Sunrise warehouse. Both are part of the "Replenishment Team," and are responsible for removing pallets of inventory from bulk storage and transporting them to a specific area where they are broken down into smaller

quantities. SINCLAIR is employed by Penske and is commonly assigned to transport Owens & Minor's inventory.

12. MILLION and JOLLY's work at Owens & Minor does not permit them to relocate or move pallets of products to any staging area near the exterior doors. Instead, other employees at Owens & Minor are responsible for moving pallets of products to the staging area near the exterior doors for the day's deliveries.

13. SINCLAIR's duties include confirming and loading the pallets of products from the staging area near the exterior doors into the Penske truck. SINCLAIR then delivers the products to Owens & Minor customers.

14. After determining that numerous pallets of products were missing, Owens & Minor began monitoring their internal surveillance system. On August 10, 2020, between approximately 2:00 A.M., and 3:00 A.M., MILLION is observed on Owens & Minor's internal surveillance system moving three pallets of Halyard Nitrile Exam Gloves from their storage location and placing them in another area without surveillance coverage. JOLLY is subsequently observed on Owens & Minor's internal surveillance system placing the three pallets of Halyard Nitrile Exam Gloves in the staging area.

15. On August 10, 2020, between approximately 2:30 A.M. and 3:00 A.M., SINCLAIR is seen on Owens & Minor's internal surveillance system taking the pallets of products designated for delivery, and the three additional pallets of Halyard Nitrile Exam Gloves placed by JOLLY, from the staging area to a Penske truck and leaving the Sunrise warehouse.

16. On August 10, 2020, Integritet Global investigators began to surveil and monitor the Sunrise warehouse and subsequently observed SINCLAIR leave the Sunrise warehouse in a Penske truck at 3:00 A.M. At 3:25 A.M., after following SINCLAIR, the investigators observed

SINCLAIR back the Penske truck into a residential property located at 610 Long Island Avenue, Fort Lauderdale, Florida, 33312 (hereinafter referred to as "residential property"). Agents conducted a query of law enforcement databases and learned that the residential property is an address that is associated with JOLLY. Investigators also observed JOLLY's vehicle at that residence. At about 3:40 A.M., SINCLAIR is observed leaving the residential property in the Penske truck.

17. The investigators were unable to see SINCLAIR's activities while at the residential property. However, upon SINCLAIR's departure, investigators observed that the couch had been moved forward and a large cardboard had been placed behind it, blocking anything else behind the couch from view. Based on my training and experience, I believe this was done to conceal the stolen pallets of medical products from view.

18. Investigators continued their surveillance of the residential property and at 10:30 A.M., a U-Haul box truck was observed backing into the residential property. The U-Haul departed at 11:05 A.M. Later that day, investigators confirmed that the couch had been moved back to the rear wall of the carport.

19. Integritet Global investigators followed the U-Haul truck from the residential property and observed it back up to the receiving area doors of a Dollar City store[1] located at 6969 Sunset Strip, Sunrise, Florida, 33313 (hereinafter referred to as "Dollar City store") at 11:18 A.M. The investigators were unable to observe any activity at the Dollar City store. The U-Haul truck left the Dollar City store at 11:43 A.M.

20. On August 10, 2020, at 1:51 P.M., while conducting surveillance, Integritet Global investigators witnessed two unknown individuals loading a white van from the back of the Dollar

---

[1] Dollar City is a privately owned store in a strip mall where the public can purchase various merchandise including, but not limited to, food items, electronics, home goods, medical products, and toys.

City store. From their vantage point, the investigators confirmed that the products being loaded bore the distinctive exterior box markings of the Halyard brand of products. The white van then departed the Dollar City store at 2:00 P.M. The Integritet Global investigators followed the van to a warehouse in Miami-Dade County, where they witnessed unknown individuals unload items from the van which bore the distinctive exterior box markings of the Halyard brand of products. These items appeared to be the same products that were loaded onto the truck driven by SINCLAIR earlier that day from the Sunrise warehouse.

21. On August 12, 2020, at approximately 2:30 A.M., MILLION is seen on Owens & Minor's internal surveillance system removing a pallet of 3M N95 Respirators ("medical masks") from the storage location and placing it in another area without surveillance coverage. At approximately 2:35 A.M., JOLLY is later observed placing the pallet of medical masks in the staging area.

22. Owens & Minor representatives continued to monitor the internal surveillance system and on August 12, 2020, at approximately 2:40 A.M., JOLLY is observed on Owens & Minor's internal surveillance system placing one pallet of Halyard Nitrile Exam Gloves in the staging area.

23. Continuing on August 12, 2020, between approximately 2:35 A.M. and 2:50 A.M., SINCLAIR is observed on Owen & Minor's surveillance system taking the pallets of products designated for delivery, and the additional pallets of medical supplies placed by JOLLY, from the staging area and loading the pallets into a Penske truck.

24. At about 3:31 A.M. on August 12, 2020, Integretit Global investigators observed SINCLAIR leave the Sunrise warehouse in the Penske truck. At 3:46 A.M., SINCLAIR drove the Penske truck in the vicinity of the residential property. SINCLAIR is then observed leaving the area at 4:04 A.M. in the Penske truck. At 4:12 A.M., the investigators observed that the couch at

the residential property had been moved forward and large cardboard had been placed behind it, blocking anything else behind the couch from view.

25. At around 10:44 A.M. on August 12, 2020, Integritet Global investigators witnessed a U-Haul box truck arriving at the residential property. The U-Haul departed the residential property at 11:30 A.M.

26. Just as they did on August 10, 2020, Integritet Global investigators followed the U-Haul truck as it left the residential property. The investigators then observed the U-Haul truck arrive at the same Dollar City store from the August 10th surveillance and back into the receiving area of the store. The investigators were unable to witness any activity at the Dollar City store. The U-Haul truck left the Dollar City store at 12:11 A.M.

27. On August 12th, Integritet Global investigators followed the U-Haul truck and observed it stop at the 7-Eleven gas station located at 2990 W. Broward Boulevard, Fort Lauderdale, Florida. The investigators took photographs of the two occupants of the U-Haul while it was stopped at the 7-Eleven gas station. A.M.C., the Operations Manager at Owens & Minor, examined the photographs taken at the 7-Eleven gas station and confirmed the two individuals were MILLION and JOLLY.

28. Owens & Minor representatives continued to monitor their internal surveillance system and on August 18, 2020., between 2:45 A.M. and 3:15 A.M., MILLION is observed on the surveillance system removing two pallets of Halyard Nitrile Exam Gloves and one pallet of Medline Nitrile Gloves from the storage location, without authorization, and placing them in another area without surveillance coverage. Later, JOLLY is seen placing the three pallets in the staging area.

29. Later on August 18, 2020, between 2:50 A.M. and 3:20 A.M., SINCLAIR is observed on Owens & Minor's surveillance system taking the pallets of products designated for delivery, and the three additional pallets of products placed by JOLLY, from the staging area to a Penske truck and leaving the Sunrise warehouse.

30. Based on the information provided by Owens & Minor, law enforcement conducted surveillance at the Dollar City store on August 18, 2020. A beige Honda vehicle registered to JOLLY was parked at the back of the Dollar City store. At approximately 12:30 P.M., an individual resembling SINCLAIR arrived at the rear of the Dollar City store driving a Penske truck. The Agents then observed individuals resembling SINCLAIR, JOLLY, and MILLION, and an unknown individual, removing pallets from the Penske truck and bringing them into the rear entrance of the Dollar City store. Law enforcement observed them as they unloaded the truck and left the area.

31. On August 18, 2020, at approximately 1:30 P.M., other law enforcement officers and I observed the same white van from the earlier surveillance on August 10th arrive at the Dollar City store. Two unknown individuals exited the van and appeared to load it with items from the back of the Dollar City store. I followed the van to a different warehouse in Miami-Dade County where I witnessed the unknown individuals unloading items from the van that bore the distinctive exterior box markings of the Halyard brand of products.

32. On August 24, 2020, at approximately 2:30 A.M., JOLLY was observed on Owens & Minor's internal surveillance system, again placing four (4) pallets of medical supplies without authorization, into the staging area.

33. Owens & Minor representatives continued to monitor the internal surveillance system and SINCLAIR was later observed taking the pallets of medical supplies designated for delivery, and

the additional four (4) pallets of medical supplies placed by JOLLY, from the staging area and loading the pallets into a Penske truck.

34. Law enforcement officers and I followed SINCLAIR, who was in the Penske truck, to the residential property. We observed the Penske truck back into the driveway and up to the carport. The truck was there for approximately ten minutes. After the truck left the area, law enforcement observed a couch and a large cardboard behind it, blocking anything behind the couch from view. Based on my training and experience, I believe this was done to conceal stolen pallets of products from view.

35. At approximately 9:30 A.M., representatives of Owens & Minor confirmed that the four (4) pallets taken from the Sunrise warehouse contained Medline Nitrile Exam Gloves. Owens & Minor provided law enforcement with pictures of sample boxes of Medline Nitrile Exam Gloves, which have a distinctive blue square border and the word "FitGuard."

36. At approximately 10:00 A.M., Integretit Global Investigators observed JOLLY and MILLION arrive at a U-Haul facility on Broward Boulevard in Fort Lauderdale, Florida. A short time later, I observed a U-Haul truck back up to the carport at the residential property. I then observed two individuals loading boxes from the carport into the back of the U-Haul truck. As the individuals finished loading and began to leave, a red Toyota pickup truck registered to SINCLAIR arrived. A short time later, other law enforcement officers and I followed SINCLAIR's vehicle and the U-Haul truck as they travelled in tandem to the Dollar City store.

37. Law enforcement observed the U-Haul truck back up to the rear receiving area of the Dollar City store, and observed SINCLAIR's vehicle park on the side of the Dollar City store. The receiving area doors of the Dollar City store were opened, and law enforcement observed individuals matching the descriptions of JOLLY, MILLION, and SINCLAIR walking around the

U-Haul truck. They also observed a fourth adult male, later identified as I.M.S., walk around the U-Haul truck. Agents later determined that I.M.S. is an employee and the principal operator of the Dollar City Store.

38. Several minutes later, law enforcement approached the rear of the U-Haul truck that was backed up to the open receiving doors of the Dollar City store. Law enforcement observed JOLLY, MILLION, and SINCLAIR moving boxes from the U-Haul truck through the open receiving doors and into the Dollar City store. While standing near the rear passenger side of the U-Haul truck, law enforcement observed twenty-two (22) boxes placed on a pallet just inside the receiving doors. Law enforcement immediately recognized the boxes from the pictures provided by Owens & Minor representatives earlier that day. They also observed two additional pallets of distinctive Medline packaging inside the receiving area of the Dollar City store. Law enforcement further observed additional boxes of distinctive Medline packaging in the open rear of the U-Haul truck.

39. JOLLY, MILLION, SINCLAIR, and I.M.S. were detained for investigation, and law enforcement agents conducted a protective sweep of the Dollar City store for officers' safety. During the protective sweep, agents observed an open room with no doors in the receiving area and were able to see, in plain view, additional pallets containing distinctive Medline packaging.

40. Representatives from Owens & Minor arrived on scene and confirmed that nine (9) pallets of Medline gloves and an additional ten (10) boxes of 3M N-95 medical masks recovered by law enforcement were, in fact, their stolen inventory.

## CONCLUSION

41. Based on my training and experience, and as further supported by the facts in this Affidavit, I respectfully submit that probable cause exists to charge JOLLY, MILLION, and SINCLAIR with using a means or facility of interstate or foreign commerce to steal pre-retail medical products, in

violation of Title 18, United States Code, Section 670(a)(1), while being employed by, or as an agent of, an organization in the supply chain for the pre-retail medical product, in violation of Title 18, United States Code, Section 670(b)(1).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

JOHN WALENDA
U.S. POSTAL INSPECTION SERVICE

Attested to by the applicant in accordance with
the requirements of Fed. R. Crim. P. 4.1 by   FaceTime and
telephone this  25  day of August 2020.

HONORABLE JARED M. STRAUSS
UNITED STATES MAGISTRATE JUDGE